UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| OMAR AL-DAHIR | * | CIVIL ACTION NO. 08-563 |
| VERSUS | * | SECTION "N" (JUDGE ENGELHARDT) |
| NORTHROP GRUMMAN INFORMATION TECHNOLOGY, NORTHROP GRUMMAN CORPORATE HEADQUARTERS, FEDERAL BUREAU OF INVESTIGATION, FEDERAL BUREAU OF INVESTIGATION, NEW ORLEANS DIVISION, RONALD D. SUGAR, individually and in his capacity as Chairman and Chief Executive Officer, Northrop Grumman Corporation, THOMAS W. SHELMAN, individually and in his capacity as Chief Information Officer, Northrop Grumman Corporation, SHABBIR SHAD, individually and in his capacity as Director of Human Resources, Northrop Grumman Corporation, JAN RIDEOUT, individually and in her capacity as Vice President and CIO, Northrop Grumman Corporation, TIM McKNIGHT, individually and in his capacity as Vice-President of Information Security, Northrop Grumman Corporation, ROBERT MUELLER III, in his capacity as Director of the Federal Bureau of Investigation, JOSEPH BILLY JR., individually and in his capacity as Assistant Director in Charge Counterterrorism, Federal Bureau of Investigation, and JAMES BERNAZZANI, Individually and in his capacity as the Special Agent in Charge, Federal Bureau of Investigation New Orleans Division | * * * * * * * * * * * * | MAG. (4) (JUDGE ROBY) |

# **O R D E R   A N D   R E A S O N S**

Two motions are presently before the Court: First, a Motion to Compel Arbitration or, alternatively, to Dismiss by Northrop Grumman Information Services ("NGIT") and several of its employees who are sued in their individual capacities (together, "the Northrop-Grumman

1

Defendants"). Second, the Plaintiff's Motion for Disclosure of Affidavits and Material in Support of Search Warrant and for Return of Property Seized.

## I. BACKGROUND

Omar A. Al-Dahir, an American citizen of Iraqi descent, was hired by Northrop Grumman Information Technology ("NGIT") on April 4, 2003, and commenced his job as a software engineer ten days later. *See* Mot. Compel at Ex. 1 (Rec. Doc. 20) (offer letter). He was an at-will employee. *Id.* at Ex. 2 (employee understanding agreement). Al-Dahir signed, as a condition of his acceptance of employment at NGIT, a mutual agreement to arbitrate any claims against NGIT, including

> claims for breach of any contract or covenant, express or implied;
> tort claims; claims for discrimination, including but not limited to
> discrimination based on race, sex, religion, national origin, . . .;
> and claims for violation of any federal, state, or other
> governmental constitution, statute, ordinance or regulation.

*Id*. at Ex. 3 (arbitration agreement). The agreement expressly included claims against affiliated and subsidiary organizations of NGIT, as well as its officers, directors, and employees, and it expressly survives the employer-employee relationship and applies to any claim arising from an employee's term of employment, whether asserted during or after that term. *Id.* Northrop-Grumman would later reiterate the arbitration agreement in later-issued policies which it mailed to all employees, including Al-Dahir. *Id*. at Ex. 4, 5 (arbitration policies and proof of mailing).

Al-Dahir claims that after the American-led coalition invasion of Iraq in March 2003, he became the victim of harassing and discriminatory remarks about his religious and ethnic heritage by his supervisors and co-workers. *See* Compl. at ¶ 22 (Rec. Doc. 3). Though he reported this harassment to management, he claims management failed to act on his complaints. *Id.* Around the same time, Al-Dahir claims he was contacted by agents of the Federal Bureau of Investigation, who threatened his employment with NGIT unless he agreed to cooperate in monitoring Islamic groups in the New Orleans metropolitan area. *Id*. at ¶¶ 17-20.

2

Al-Dahir transferred to a new position within NGIT in October 2004, but claims that he continued to be harassed by discriminatory comments. *Id*. at ¶¶ 26, 34. These incidents allegedly caused Al-Dahir physical symptoms of stress and he requested and received medical leave from his position at NGIT in June 2005. *See* Mot. Compel, at 2-3 (Rec. Doc. 20). Al-Dahir filed a claim of discrimination based on national origin and religion with the EEOC on May 1, 2006. *Id*. at Ex. 7 (EEOC Charge No. 2660-00705). Al-Dahir alleged that he had been harassed and subjected to a hostile work environment from 2004 until the last day he worked at NGIT, which was June 13, 2005. On August 1, 2006, EEOC dismissed the complaint because Al-Dahir failed to cooperate in the investigation. *Id*. at Ex. 8 (EEOC Determination Letter). The EEOC granted reconsideration of its initial dismissal on August 4, 2006. *Id*. at Ex. 9 (EEOC Reconsideration). One year later, the EEOC again dismissed Al-Dahir's complaint for insufficient evidence. *Id*. at Ex. 10 (EEOC Determination Letter).

Meanwhile, Al-Dahir claims that he was intermittently contacted by FBI agents through 2004 and up to the time he took a leave of absence from NGIT. At each contact they placed increasing pressure on Mr. Al-Dahir to cooperate in their ongoing investigations. *See* Compl. At ¶¶ 24-25, 27-30, 32-34, 39-41 (Rec. Doc. 3). On September 27, 2006, Al-Dahir's home and automobiles were searched by FBI agents pursuant to warrants issued five days earlier by a federal magistrate judge under case numbers 06-MAG-09/22-1 through 06-MAG-09/22-6. On the government's motion, the magistrate sealed the applications and affidavits submitted by the FBI in support of the warrants. *See In the Matter of the Application for a Search Warrant for 935 Papworth Avenue, Metairie, Louisiana*, 06-MAG 09/22-1 (Sept. 22, 2006). The search was targeted to find evidence of computer hacking and sought specific computer equipment as well as documents. To date, however, no criminal indictment has issued against Plaintiff.

Al-Dahir filed the present suit against the above-named defendants on January 22, 2008, stating claims under the Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Act of 1972 and the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. §§ 2000e-2 *et seq*. and § 1981a; 42 U.S.C. §§ 1985 and 1986; the Privacy Act, 5 U.S.C. § 552a; the Freedom of Information Act, 5 U.S.C. § 552; the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1801, *et seq*.; the Declaratory Judgment Act, 28 U.S.C. § 2201; the First, Fourth, and Fifth Amendment of the Constitution; and a constitutional tort claims under *Bivens v. Six Unnamed Agents of the Federal Bureau of Investigation*, 403 U.S. 388 (1971). He filed a second suit on January 28, 2008 under case number 08-564. This second action was brought pursuant to FED. R. CRIM. P. 41(g) and sought return of property seized during the September 2006 search. The case was dismissed without prejudice by this Court because it sought relief identical to the relief sought in this case and because there was no related criminal proceeding. *See* Order of May 8, 2008, No. 08-564 (Rec. Doc. 16).

## II. DISCUSSION

**A.** *Plaintiff's Claims Against the Northrop-Grumman Defendants Are Factually Unrelated to His Claims Against the FBI, Warranting Severance of the Claims*

The Court may sever any claim against a party for good cause. *See* FED. R. CIV. P. 21. In this case, Al-Dahir's claim of employment discrimination under Title VII is unrelated to any Constitutional, statutory, or other claim he may have against the FBI and its agents. Al-Dahir does not claim that NGIT or its employees were acting under color of law in the alleged discrimination. He is unable to draw any connection between Northrop-Grumman and the issuance of the search warrants. Given the unrelated factual bases of Al-Dahir's various claims, severing the case to allow plaintiff to proceed with his statutory employment discrimination claims against Northrop-Grumman and his constitutional and other claims against the FBI would

4

serve the ends of speedy and efficient adjudication.

Accordingly, **IT IS ORDERED** that Plaintiff's claims under Title VII against the Northrop-Grumman Defendants for employment discrimination shall be and hereby are severed from the other Constitutional and statutory claims asserted by Plaintiff against the FBI Defendants. **IT IS FURTHER ORDERED** that the Clerk of Court shall assign a new civil action number to Plaintiff's claims against the FBI Defendants, and docket thereunder all filings that heretofore have been made in Civil Action Number 08-563, as well as a copy of this Order, such that *both* actions will have a copy of these documents. Thereafter, unless otherwise ordered, the two actions shall be handled separately and independently from the other.

**B.** *Plaintiff's Title VII Claim is Subject to Mandatory Arbitration*

The Supreme Court has recognized the strong federal policy favoring arbitration agreements. *See Southland Corp v. Keating,* 465 U.S. 1, 10 (1984); *see also Terrebone v. K-Sea Transp. Corp.*, 477 F.3d 271, 285 (5th Cir. 2007). It has held that all but a few, statutorily specified kinds of employment agreements are subject to the terms of the Federal Arbitration Act. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 113-119 (2001). Under that Act, an agreement to commit a dispute to arbitration is valid and irrevocable. *See* 9 U.S.C. § 2. "[U]pon being satisfied that the issue involved in [a] suit or proceeding is referable to arbitration under such an agreement, [a district court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. Al-Dahir admits that he signed a mutual agreement to arbitrate with NGIT. Opp. Mot. Compel at 1 (Rec. Doc. 21). He claims that NGIT "conspired" with the FBI to obtain warrants to search his home and property, and that such acts were outside the scope of the arbitration agreement and render it inapplicable. *Id*. Al-Dahir has produced no evidence of conspiracy, and the face of the warrants of September 22, 2006, attached to his Opposition as

Exhibit 1, suggest none. Regardless, when an employment agreement contains an arbitration clause, there is a presumption of arbitrability such that in determining whether a dispute falls within it, ambiguities are construed in favor of arbitration. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (*citing AT&T Technologies Inc. v. Communication Workers of America*, 475 U.S. 643, 650 (1986)). Under the terms of the arbitration agreement signed by Al-Dahir, his claims against NGIT, its affiliates, subsidiaries, and employees, are subject to mandatory arbitration. Defendant's motion to compel arbitration is **GRANTED** and accordingly Plaintiff's claims against Defendants Northrop Grumman Information Technology, Northrop Grumman Corporate Headquarters, Sugar, Shelman, Shad, Rideout, and McKnight are hereby **STAYED** until the parties have sought arbitration under the terms of their agreement.

*C. Plaintiff Does Not Have a Constitutional Right of Access to the Sealed Warrant Affidavits*

Plaintiff's second motion reiterates his earlier-dismissed claim under FED. R. CRIM. P. 41(g) for return of the property seized pursuant to the search warrants. Additionally, Plaintiff seeks the disclosure of the sealed affidavits upon which the magistrate judge relied in deciding whether there was probable cause for the warrants to issue, apparently on two grounds. First, Plaintiff claims that he has a Fourth Amendment right of access to the documents to decide whether to test the constitutionality of the search. *See* Mot. Discl. at 2 (Rec. Doc. 60) (arguing that Al-Dahir cannot exercise his "Fourth Amendment entitlement to contest constitutional legitimacy of the searches of [his] homes and automobiles without any opportunity to examine and test the probable cause averments set fourth [*sic*] in the search warrant affidavits and materials."). Second, Al-Dahir claims a right of access to the affidavits under the Due Process Clause of the Fifth Amendment, so that he may determine whether to seek return of property allegedly seized without cause. *See id*. at 14 ("Due process also requires that the records be unsealed so that Defendants [*sic*] may examine them. . . . Defendants [*sic*] have a right to

6

consider whether they wish to . . . seek to obtain the return of their property[, a right that is] 'obviously seriously encumbered by the present seal.'") (citation omitted).

In support of this argument, Al-Dahir cites to a number of district court cases that conclude that there is or may be a Fourth or Fifth Amendment right to preindictment disclosure of the affidavits that support a search warrant. *See In Re Search Warrant for 2934 Anderson Morris Road*, 48 F. Supp. 2d 1082, 1083-84 (N.D. Ohio 1999) (concluding that even if there is a Fourth Amendment right to disclosure, the instant affidavits should remain sealed); *In the Matter of the Search of Up N. Plastics, Inc.*, 940 F. Supp. 229 (D. Minn 1996) (ordering disclosure on Fourth Amendment grounds); *In Re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296 (S.D. Ohio 1995) (same); *In the Matter of the Search of Wag-Aero, Inc.*, 796 F. Supp. 394 (E.D. Wis. 1992) (ordering disclosure on due process grounds).[1]

The leading case finding a Constitutional right of access to warrant affidavits is *Up North Plastics*, 940 F. Supp. at 229, where a Minnesota district court drew heavily from an Eighth Circuit decision finding that the press has a First Amendment right to warrant affidavits to conclude that there was a similar right under the Fourth Amendment. *See In Re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988) (finding First Amendment right to sealed warrant affidavits).[2] The *Up North Plastics* court concluded that "a

---

[1] One additional district court, in a case not cited by Plaintiff, has found a Fourth Amendment right to warrant affidavits. *See In Re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584 (D. Md. 2004).

[2] That decision has itself been rejected by a number of courts. *See, e.g.*, *Times Mirror Co. v. United States*, 873 F.2d 1210, 1212 (9th Cir. 1989); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989); *United States v. Cianci*, 175 F. Supp. 2d 194, 200 (D.R.I. 2001); *United States v. Certain Real Prop. Located in Romulus, Wayne County, Mich.*, 977 F. Supp. 833, 835 (E.D. Mich. 1997); *In Re Four Search Warrants*, 945 F. Supp. 1563, 1567 (N.D. Ga. 1996); *In Re Macon Telegraph Pub. Co.*, 900 F. Supp. 489, 490 (M.D. Ga. 1995); *Matter of Flower Aviation of Kansas, Inc.*, 789 F. Supp. 366, 367 (D.Kan. 1992); *In re 3628 V Street*, 628 N.W.2d 272, 275 (Neb. 2001); *State v. Cummings*, 546 N.W.2d 406, 413 (Wis. 1996); *Newspapers of

person whose property has been seized pursuant to a search warrant has a right under the [W]arrant [C]lause of the Fourth Amendment to inspect and copy the affidavit upon which the warrant was issued" since that Amendment's probable cause requirement "is meaningless without some way for targets of the search to challenge the lawfulness of that search." *Up N. Plastics*, 940 F. Supp. at 232-33. The district court concluded that the right was not absolute and could be defeated upon a showing of compelling government need. *Id.* at 233.

The Seventh Circuit reached the opposite conclusion in *In the Matter of EyeCare Physicians of America*, 100 F.3d 514 (7th Cir. 1996). Noting that the Warrant Clause of the Fourth Amendment did not address the issue of sealed affidavits even implicitly, the court concluded that FED. R. CRIM. P. 41 was not a codification of a Fourth Amendment right, "but rather provides an administrative framework for the exercise of the common law right of access." *Id.* at 517.[3] The pre-indictment target of a search warrant has a right of access to the warrant affidavit no different than the "general right held by all persons unless circumscribed by a specific court order." *Id.* The Seventh Circuit also rejected a Fifth Amendment right of access, since in that particular case there had been no deprivation of property, because the seized documents had been returned. But the court made clear that its decision did not rest on those technical grounds, since even if there had been a predicate deprivation of property, "If

---

*New England, Inc. v. Clerk-Magistrate of the Ware Div. of the Dist. Court Dept.*, 531 N.E.2d 1261, 1266 (Mass. 1988).

[3] EyeCare Physicians pressed its Rule 41 claim under the-then subdivision (g) of that Rule–the same section Al-Dahir makes his claim under in the instant case–but in December 2002, as one provision of the USA PATRIOT Act, the Rule was amended and relettered. *See* USA PATRIOT Act, PUB.L. 107-56, 115 STAT. 291, at § 219 (2002). The specific subdivision that EyeCare Physicians made its claim under became subdivision (h)i, which concerns the filing of papers relating to the warrant, including affidavits, with the clerk of the district court. The present subdivision (g) was, before the revision, subdivision (e), "Motion for Return of Property," which was the provision at issue in *In Re Grand Jury Proceedings*.

8

preindictment disclosure of sealed warrant affidavits was required to satisfy due process . . . the hands of law enforcement would be needlessly tied and investigations of criminal activity would be made unduly difficult if not impossible." *Id*.

The Fifth Circuit briefly considered *EyeCare Physicians* in *In Re Grand Jury Proceedings*, 115 F.3d 1240 (5th Cir. 1997) (opinion by Jones, J.). While noting that the *EyeCare Physicians* decision was "sensible," *id.* at 1246, the precise issue presented here was not before the Circuit in that case, nor did the Circuit engage in much analysis of that decision or the issue presented here.[4] Obviously, this Court is mindful of the Circuit's characterization of *EyeCare Physicians* and is greatly guided by it. But given that the precise issue raised here was not considered in *Grand Jury Proceedings*, the Court engages in its own process of analysis, and finds the reasoning of the Seventh Circuit to be persuasive.

---

[4] In *In Re Grand Jury Proceedings*, a Colorado Plaintiff that was the target of a search warrant supported by sealed affidavits moved in the district court in Houston to quash grand jury subpoenas that were served at the same time the search was executed. *In Re Grand Jury Proceedings*, 115 F.3d at 1242. The district court, in considering the motion, reviewed the sealed affidavits *in camera*. *Id.* The district court issued a conditional order requiring the government to disclose the search warrant affidavits to Plaintiff, or the court would suppress any evidence flowing from the search. *Id.* at 1243. The Fifth Circuit held–without reference to *EyeCare Physicians*–that the district court committed error by granting Fourth Amendment relief that Plaintiff had not requested. *Id.* at 1244-45. The Court noted that even if Plaintiff had moved for return of the property under FED. R. CRIM. P. 41(e)–now 41(g)–the motion would have failed, since the district court in Texas lacked jurisdiction under the then-existing version of the statute. *Id.* at 1245-46. The Circuit then engaged in a multi-factor analysis in rejecting Appellees' argument that the Texas district court had "anomalous jurisdiction" to order disclosure of the affidavits. One of the factors it considered in its analysis was whether the government had displayed a callous disregard of Plaintiff's Constitutional rights, and in a brief discussion of this factor, the Circuit noted with reference to *EyeCare Physicians* that the court "ordinarily abides by the decisions of our sister circuits, and we do so with respect to this sensible decision." *Id*. at 1246. It thus concluded that the government had not shown callous disregard of Plaintiff's Constitutional rights. It is unclear whether the Fifth Circuit's reference to *EyeCare Physicians* was meant to adopt the reasoning in that case as dispositive of the issue presently before this Court, or was merely a determination that in light of an extant appellate decision finding that there was no Constitutional right to sealed warrant affidavits, the government's actions were reasonable and thus did not evidence "callous disregard" of movant's Constitutional rights.

9

The starting point for the Court's analysis is the text of the Constitutional provisions at issue. The Fifth Amendment holds that "No person shall be . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. 5. Al-Dahir's argument is, apparently, that he needs access to the sealed affidavits to know whether to seek the return of the property seized by the FBI. The FBI notes that it has returned most of the property already, and has provided Mr. Al-Dahir with copies of seized documents. *See* Opp. Mot. Discl. at n.9 (Rec. Doc. 63). Still, to the extent that any of Plaintiff's property remains in the custody of the FBI, the instant case is unlike *EyeCare Physicians*, where only documents were seized and copies were returned, and thus there was no deprivation of property. But like the Seventh Circuit, this Court does not believe that the question of whether there is a preindictment due process right to sealed warrant affidavits turns on whether there has been a continuing deprivation of property. In this case, any such deprivation of property has occurred upon a showing of probable cause and pursuant to the execution of search warrants signed by a federal magistrate, in the context of an ongoing criminal investigation. Such procedures more than satisfy the requirements of due process for a deprivation of property, and thus this Court rejects Al-Dahir's argument that due process requires the disclosure of sealed warrant affidavits.[5]

Regarding his Fourth Amendment claim, Al-Dahir argues that he cannot challenge either the particularity of the warrants or whether there was probable cause to issue them, without access to the sealed warrant affidavits. Of course, the language of the Fourth Amendment does

---

[5] Additionally, seeing as Mr. Al-Dahir has filed a motion under FED. R. CR. PRO. 41(g) seeking the return of that property, without having viewed the warrant affidavits, he obviously does not need access to those affidavits to decide whether to "seek to obtain the return of [his] property." Mot. Discl. at 14 (Rec. Doc. 60).

not speak to any such right of access to warrant affidavits.[6] Were Al-Dahir to be indicted, he may well be entitled to the affidavits. *See, e.g.*, *Grand Jury Proceedings*, 115 F.3d at 1247 (noting that movants "may still pursue a suppression order, *should they be indicted*") (emphasis added). But courts have long been willing to shroud criminal investigations in secrecy, and to seal, redact, and withhold information from the public and even potential criminal defendants, in order to protect law enforcement's ability to investigate crimes effectively. *See, e.g., Rovario v. United States*, 353 U.S. 53 (1957) (not a Constitutional violation to withhold informer's identity); *United States v. De Los Santos*, 810 F.2d 1326 (5th Cir. 1987) (not a Constitutional violation to close suppression hearing when identity of informant may be revealed); *In Re Grand Jury Proceedings*, 613 F.2d 501 (5th Cir. 1980) (grand jury secrecy serves important interests, such as witness protection). To the extent that such secrecy runs afoul of Constitutional protections, those protections accrue to criminal defendants, not civil plaintiffs. *See, e.g.*, *Roviaro*, 353 U.S. at 60-61 ("Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful *to the defense of an accused*, or is essential to a fair determination of a cause, the privilege must give way.") (emphasis added).

Accordingly, Plaintiff's Motion is **DENIED** to the extent that it seeks disclosure of the affidavits sealed by the magistrate judge in *In the Matter of the Application for a Search Warrant for 935 Papworth Avenue, Metairie, Louisiana*, 06-MAG 09/22-1 (Sept. 22, 2006). The Motion is also **DENIED AS MOOT** to the extent that it seeks return of seized property under FED. R. CRIM. P. 41(g), as the Motion merely seeks relief duplicative of that requested in Plaintiff's Complaint, the Answer to which is due on October 14, 2008.

---

[6]"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend 4.

### III. CONCLUSION

Considering the foregoing, **IT IS ORDERED**:

(1) That Plaintiff's claim under Title VII against the Northrop-Grumman Defendants for employment discrimination shall be and hereby are **SEVERED** from the other constitutional and statutory claims asserted by Plaintiff against the FBI Defendants;

(2) The Clerk of Court shall assign a new civil action number to Plaintiff's claims against the FBI Defendants, and docket thereunder all filings that heretofore have been made in Civil Action Number 08-563, as well as a copy of this Order, such that *both* actions will have a copy of these documents. Thereafter, unless otherwise ordered, the two actions shall be handled separately and independently from the other;

(3) Defendant's **Motion to Compel Arbitration (Rec. Doc. 20)** is **GRANTED** and accordingly Plaintiff's claims against Defendants Northrop Grumman Information Technology, Northrop Grumman Corporate Headquarters, Sugar, Shelman, Shad, Rideout, and McKnight are hereby **STAYED** until the parties have sought arbitration under the terms of their agreement;

(4) Plaintiff's **Motion for Disclosure (Rec. Doc. 60)** is **DENIED** to the extent that it seeks disclosure of the affidavits sealed in *In the Matter of the Application for a Search Warrant for 935 Papworth Avenue, Metairie, Louisiana*, 06-MAG 09/22-1 (Sept. 22, 2006). The Motion is also **DENIED AS MOOT** to the extent that it seeks return of seized property, as the Motion merely seeks relief duplicative of that requested in Plaintiff's Complaint.

New Orleans, Louisiana, this 26th day of September 2008.

_____
**KURT D. ENGELHARDT**
**United States District Judge**